IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*In re*:

**AYMAN ABU AITA**                                       :
Beit Sahour, Bethlehem, West Bank
Palestine,                                               :

     Plaintiff,                   :

versus                                                   : Civil Action Number: 09-02285 (RWR)
                                              *FIRST AMENDED COMPLAINT*

**SACHA NOAM BARON COHEN, also known as** : *FOR DAMAGES AND FOR*
**SACHA BARON COHEN**                       *INJUNCTIVE RELIEF*
11766 Wilshire Boulevard                                 : **JURY TRIAL DEMANDED**
Unit Number 1610
Los Angeles, California 90025,                           :

and                                                      :

**DAVID MICHAEL LETTERMAN**                              :
193 Baxter Road
North Salem, New York 10560,                             :

and                                                      :

**NBC UNIVERSAL, INC., a**                               :
**Delaware corporation, doing business as**
**"Universal Pictures" and "Universal Studios**          :
**Home Entertainment"**
30 Rockefeller Plaza                                     :
New York, New York 10009
Telephone: (212) 757-5294,                               :
 *serve*: CT Corporation System
      1015 Fifteenth Street, N.W.                :
      Suite 1000
      Washington, D.C. 20005,                    :

and                                                      :

**CBS BROADCASTING, INC., a New York**                   :
**Corporation**
51 West 52nd Street                                      :
New York, New York 10019
Telephone: (212) 975-4321,                               :
 *serve*: Corporation Service Company
      1090 Vermont Avenue, N.W.                  :
      Washington, D.C. 20005,

1

and                                                              :

**WORLDWIDE PANTS, INCORPORATED,**          :
**a New York corporation**
1697 Broadway                                                    :
New York, New York 10019
Telephone: (212) 975-5300,                                       :
 *serve*: New York State Department of State
      99 Washington Avenue                                :
      Suite 600
      Albany, New York 12231                              :
*alternative service*: David Michael Letterman, *qua*
          Chief Executive Officer thereof  :
          193 Baxter Road
          North Salem, New York 10560,    :

and                                                              :

**GANNETT COMPANY, INC., a Delaware**       :
 **Corporation, doing business as WUSA Television**
7950 Jones Branch Drive                                          :
McLean, Virginia 22107-0150
Telephone: (703) 854-6696,                                       :
*serve*: Craig A. Dubow, Chairman, President &
      CEO                                                :
      7950 Jones Branch Drive
      McLean, Virginia 22107-0150,                       :

and                                                              :

**LAWRENCE CHARLES WENGROD,**               :
**also known as**
**LARRY CHARLES**                                                :
9100 Wilshire Boulevard, #1000 West
Los Angeles, California 00024,                                   :

and                                                              :

**BLOCKBUSTER, INC., a Delaware**           :
**Corporation**
Renaissance Tower                                                :
1201 Elm Street
Dallas, Texas 75270                                              :
Telephone: (214) 854-4266,
*serve*: Prentice-Hall Corporation System, Inc.                  :
      1090 Vermont Avenue, N.W.
      Washington, D.C. 20005,                            :

   Defendants.          :

### FIRST AMENDED COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF
*(Jury Trial Demanded)*

  COMES NOW, before this Honorable Court, your plaintiff in the above-encaptioned cause, AYMAN ABU AITA, by and through his undersigned attorneys and counsellors, *viz*., Joseph Peter Drennan and Sam W. Burgan, respectfully, to lodge his *First Amended Complaint for Damages and for Injunctive Relief,* by showing unto this Honorable Court as follows, *viz*.:

### PARTIES

I.

  That your plaintiff, *viz*., AYMAN ABU AITA, is a natural adult person, of Palestinian nationality, whom, at all times relevant herein, has been, and is presently, domiciled in the village of Beit Sahour, West Bank, in the territory known as Palestine, whom, until recently, supported his wife and four children as a grocer; he is also a Board Member, as well as the Treasurer, of the Holy Land Trust, a charitable organization committed to promoting peace and reconciliation among Israelis and Palestinians, of all religious faiths, and he is a Christian whom is a member and congregant of the Greek Orthodox Church;

II.

  That, upon information and belief, your defendant known as SACHA NOAM BARON COHEN, also known as SACHA BARON COHEN (hereinafter referenced *qua* "COHEN"), is a natural adult person, who is a British Subject, domiciled in the State of California, whom is employed as, *inter alia*, an actor, comedian and writer, whom was featured in, *inter alia*, the "Brüno" Movie;

III.

  That, upon information and belief, your defendant known as DAVID MICHAEL LETTERMAN (hereinafter referenced *qua* "LETTERMAN"), is a natural adult person, domiciled in

the State of New York, residing at 193 Baxter Road, North Salem, New York 10560, whom is employed as, *inter alia*, a comedian and television host, who hosts, *inter alia*, "Late Show With David Letterman," at the Ed Sullivan Theater, in New York City, which show is broadcast over the CBS Television Network, and, as more fully described herein, said defendant hosted The Late Show With David Letterman on 7 July 2009;

IV.

That, upon information and belief, your defendant known as NBC UNIVERSAL, INC. (hereinafter referenced *qua* "UNIVERSAL"), is a *de jure* corporate personality, organized under the laws of the State of Delaware, and having its principal place of business at 30 Rockefeller Plaza, New York, New York 10009; upon further information and belief, said corporate defendant is one of the world's larger media and entertainment companies, and is involved, *inter alia*, in the business of distributing cinematic films, through its "Universal Pictures" division, as well as in the distribution and marketing for retail to the public of DVD format recordings of cinematic works, through its "Universal Studios Home Entertainment" business; upon further information and belief, UNIVERSAL was and is the domestic and worldwide distributor of both the cinematic and DVD versions of the "Brüno" Movie;

V.

That, upon information and belief, your defendant known as CBS BROADCASTING, INC. (hereinafter referenced *qua* "CBS"), is a *de jure* corporate personality, organized under the laws of the State of Delaware, and having its principal place of business at 51 West 52nd Street, New York, New York 10019; upon further information and belief, said corporate defendant is a major American television broadcasting network which distributes for broadcast on its numerous television station affiliates across the States, including, *inter alia*, WUSA Television, Channel 9, in Washington, D.C., a full compliment of regular and special events programming, including, *inter alia*, "The Late Show With David Letterman";

VI.

That, upon information and belief, your defendant known as WORLDWIDE PANTS, INC. (hereinafter referenced *qua* "WORLDWIDE"), is a *de jure* corporate personality, organized under the laws of the State of Delaware, and having its principal place of business at 1697 Broadway, New York, New York 10019; upon further information and belief, at all times relevant herein, said corporate defendant is the producer of "The Late Show With David Letterman";

VII.

That, upon information and belief, your defendant known as GANNETT COMPANY, INC. ("WUSA"), is a *de jure* corporate personality, organized under the laws of the State of Delaware, and having its principal place of business at 7950 Jones Branch Drive, McLean, Virginia 22107-0150; upon further information and belief, said corporate defendant is a major newspaper and television media company in the United States, which owns, *inter alia*, WUSA Television, Channel 9, in Washington, D.C., the longest-tenured affiliate of the CBS Television Network; upon further information and belief, WUSA broadcast, on a customary taped delay basis, *inter alia,* the unexpurgated 7 July 2009 edition of "The Late Show With David Letterman";

VIII.

That, upon information and belief, your defendant known as LARRY CHARLES WENGROD, also known as LARRY CHARLES (hereinafter referenced *qua* "CHARLES") is a natural adult person, and citizen of the United States of America, whom is believed to be domiciled in the State of California, is employed as a writer, director and producer, and was the director of, *inter alia*, the "Brüno" Movie;

IX.

That, upon information and belief, your defendant known as BLOCKBUSTER, INC. (hereinafter referenced *qua* "BLOCKBUSTER"), is a *de jure* corporate personality, organized under the laws of the State of Delaware, and having its principal place of business in the State of Texas, at Renaissance

5

Tower, 1201 Elm Street, Dallas, Texas 75270; upon further information and belief, said defendant is an American-based chain of DVD, Blu-ray Disk ® and video game rental stores, with more than 9,000 stores in 25 countries worldwide, including two stores situate in the District of Columbia, *viz.*, one outlet located at 1805 Columbia Road, N.W., Washington, D.C. 20009, and a second outlet located at 410 Eighth Street, S.E., Washington, D.C. 20003, which stores carry, *inter alia, inter alia*, the "Brüno" Movie;

## *JURISDICTION AND VENUE*

X.

That this Honorable Court has jurisdiction over the instant matter under the provisions of 28 U.S.C., § 1332 (a) (2), because there is complete diversity of citizenship between the parties hereto, and because the amount in controversy, exclusive of interest and costs to follow, exceeds the sum of seventy-five thousand dollars ($75,000); this Honorable Court may exercise properly *in personam* jurisdiction over each of your within-named defendants inasmuch as, *inter alia*, the subject matter of the instant litigation, *viz.*, certain calumnious accusations implicating your plaintiff were contained in certain discrete media, *viz.*, the cinematic and DVD versions of the "Brüno" Movie, and the 7 July 2009, broadcast of "The Late Show With David Letterman," all of which media were deliberately and intentionally published and or republished in, *inter loci,* the District of Columbia, by your defendants, each of them, acting, variously, separately, and or in concert;

## FACTUAL AVERMENTS
*(Inducement)*

XI.

That, in accordance with §219 of the Immigration and Nationality Act, as amended, the Secretary of State has designated the "Al-Aqsa Martyrs Brigade" as a Foreign Terrorist Organization (hereinafter designated *qua* "FTO")[1];

XII.

That, for the purposes of identifying a FTO, *inter alia*, the United States Code ( Title 22, Chapter 38, Paragraph 2656f(d)) defines "terrorism" as ". . . premeditated, politically motivated violence perpetrated against noncombatant targets by subnational groups or clandestine agents";

XIII.

That 18 U.S.C.,§ 2331 defines "terrorism" as:

". . . activities that involve violent . . . or life-threatening acts . . . that are a violation of the criminal laws of the United States or of any State and . . .  appear to be intended (i.) to intimidate or coerce a civilian population; (ii.) to influence the policy of a government by intimidation or coercion; or (iii.) to affect the conduct of a government by mass destruction, assassination or kidnapping . . . .";

XIV..

That, at all time relevant herein, alien representatives and members of a designated FTO are inadmissible to the United States, and are, in certain circumstances, removable from the United States[2] ;

XV.

That, in addition to its having been designated by, *inter alia,* The Government of the United States of America as a terrorist organization, as referenced *supra*, the Al-Aqsa Martyrs Brigade is generally and widely recognized throughout the world, and, perforce, in the Middle East, as a notorious terrorist group, culpable in the wanton slaughter of dozens of innocent people, and in the targeted assassination of many others;

---

1*See*: Current List of Foreign Terrorist Organizations posted by the Secretary of State's Coordinator for Counterterrorism, on the United States Department of State Internet website: http://www.state.gov/s/ct/rls/other/des/123085.htm .

2*See*: 8 U.S.C., §§ 1182 (a) (3) (B) (i) (IV)-(V), 1227.

XVI.

That, as adverted to above, your plaintiff is a peace-loving person who abhors violence, and, prior to the publication and republication of the calumnies complained of herein, enjoyed a good reputation for honesty and a peaceable nature throughout his community in Bethlehem, as well as amongst his numerous relatives, friends and associates in the United States;

XVII.

That, on or about 30 June 2009, the "Brüno" Movie premiered in Hollywood;

XVIII.

That, as adverted to *supra*, on 7 July 2009, COHEN appeared with, *inter alios*, LETTERMAN, on "The Late Show With David Letterman," which show was broadcast, on a tape-delayed basis, over CBS's eponymous broadcasting television network, including, *inter alia*, over WUSA;

XIX.

That, in the course of his aforesaid appearance with LETTERMAN, COHEN went to great lengths to portray falsely your plaintiff as a "terrorist group leader al-aqsa martyrs brigade (*sic.*)", and suggested that he learned such putative association through a contact in the "C.I.A.", presumably, the United States of America's Central Intelligence Agency";

XX.

That, although couched in some banter, a discernment of the warp and woof of the COHEN – LETTERMAN dialog gives the unmistakable impression that each defendant was desirous of conveying the message to the audience that your plaintiff was, indeed, a "terrorist", who was a group leader of the Al-Aqsa Martyrs Brigade, as evinced by the following selective sampling of excerpts from the colloquy between COHEN & LETTERMAN, set forth, *haec verba*, thusly:

BY COHEN: What could people see that they've never seen before on film? And we thought one thing would be a comedian interviewing a terrorist?  * * *  We're going to find a real terrorist. * * * We called up a contact we had at the C.I.A. and said: 'Can you help us? We're looking to find a terrorist'."

BY LETTERMAN: Bruno has a contact at the CIA?

BY COHEN:Bruno doesn't but I knew somebody who did.

BY LETTERMAN: Eventually, after a few months, we found somebody who actually lived in a town that had a terrorist from a pretty nasty group called the al-Aqsa Martyrs Brigade who are kind of the number one suicide bombers out there. . . ." *** . . .he said: 'There is a terrorist who lives in my town." So I said Great! Can we interview him but I'm a little scared about reprisal attacks from the other people in your city. * * * The guy picks a secret location (for the interview).

COHEN then goes on to recount his averred concerns for his personal safety, as he went to a "secret location", as well as during his interview with your plaintiff itself, and then the television coverage segued from a COHEN – LETTERMAN dialogue to the airing of an excerpt from the "Brüno" Movie which depicted your plaintiff being interviewed by COHEN, in which excerpt, significantly, the following caption appears, at all times, whenever, your plaintiff is shown on screen: **"terrorist group leader al-aqsa martyrs brigade"**;

The COHEN – LETTERMAN interview then draws to a close, with LETTERMAN, essentially, predicting that the "Brüno" Movie would be a "blockbuster (*sic*.)" like "Borat", COHEN's last cinematic release;

XXI.

That, as adverted to *supra*, the "Brüno" Movie was released nationwide on 10 July 2009, after having been released the day before in Australia and New Zealand; subsequently, upon information and belief, the "Brüno" Movie has been released in many other countries around the world, including, *inter alia*, Israel, where it was shown with Hebrew subtitles;

XXII.

That, on or about 17 November 2009, the "Brüno" Movie was released nationwide, on DVD recording, for sale and rental to the general public, both on-line and through innumerable retails outlets, including scores of stores in the District of Columbia, including, *inter alia*, the District of Columbia BLOCKBUSTER outlets referenced supra;

9

XXIII.

That, on even date, *id est*, 17 November 2009, COHEN and CHARLES appeared as guests on Terry Gross' respected radio show on National Public Radio ("NPR"), "Fresh Air", to discuss and promote the "Brüno" Movie; said interview was aired nationwide on NPR affiliates including, *inter alia*, locally, on WAMU and WHUR; although the scene from the "Brüno" Movie in which your plaintiff was depicted was not explicitly mentioned, COHEN and CHARLES waxed expansively about how the "Brüno" Movie represented a new genre in comedy in which the comedic actor is placed is real, dangerous situations, in which he (the comedian) thereupon deigns to make some sort of comic effect;

XXIV..

That the dust jacket encasing the retail DVD of the "Brüno" Movie explicitly mentions "terrorists", with said term deigned to reference your plaintiff and the latter's fictional bodyguard;

XXV.

That, contrary to the insinuations and representations contained in both the "Brüno" Movie, the "Brüno" Movie DVD and the aforesaid COHEN – LETTERMAN interview, at no time was COHEN in any danger when he interviewed your plaintiff, nor was the interview at a "secret location"; in fact, the interview took place at a spot selected by CHARLES and COHEN, *viz.*, the Everest Hotel, which, although located on the West Bank, in Beit Jala, is in an area designated by the Israeli military forces as "ZONE 'C'", which is under full Israeli military control;

XXVI.

That, upon information and belief, your defendants, each of them, evinced either actual malice or else a reckless disregard for the truth in respect of their respective actions vis-á-vis your plaintiff;

XXVII.

That the subject interview of your plaintiff by COHEN took place some months prior to the release to the the "Brüno" Movie under a false pretense, *viz.*, that COHEN was a German "journalist", whom was desirous of interviewing your plaintiff about the plight of the Palestinian people;

10

XXVIII.

That, upon information and belief, CHARLES and COHEN schemed to find an unwitting person (read: your plaintiff) to participate in the subject interview at the Everest Hotel, by having a currently unknown emissary of CHARLES and COHEN contact a representative of the Holy Land Trust, in Bethlehem, seeking a interview subject who was: i.) A Christian; ii.) who had been administratively detained by Israel at some point; and iii.) who was a member of the Fatah political party;

XXIX.

That such efforts by CHARLES and COHEN and their unknown confederates ultimately resulted in your plaintiff's traveling to the Everest Hotel, for what he thought would be a simple interview with some German journalist who was interested in learning about his peaceful activism with the Palestinian and Israeli peoples; as an aside, it bears mention that, at no time prior to the subject interview did your plaintiff suspect anything untoward respecting the subject interview request inasmuch as the Everest Hotel has long been a well known and popular gathering place for Palestinian and Israeli peace activists;

XXX.

That, upon information and belief, when he arrived at the Everest Hotel for his subject interview, your plaintiff was met by an unidentified confederate of CHARLES and COHEN who led him to a room upstairs in the Hotel, to meet "the German journalist" for the interview;

XXXI.

That, upon information and belief, unbeknownst to your plaintiff, confederates of CHARLES and COHEN had rented out an entire floor of the Everest Hotel in advance of the subject interview, and had had contractors configure the interview room with a false wall and a double-mirror, where CHARLES could surreptitiously monitor the subject interview;

XXXII.

That, at no time prior to the commencement of the subject interview, or else after the interview, was your plaintiff made aware that excerpts of the interview would be featured in the "Brüno" Movie;

11

XXXIII.

That, at no time prior to the subject interview or else after the conclusion of the interview, did either CHARLES or COHEN or any of their confederates disclose to your plaintiff that he would be featured in *any* movie, much less the "Brüno" Movie;

XXXIV.

That, at no time either prior to the subject interview, or after the interview, did CHARLES or COHEN, or, for that matter, anyone else, present your plaintiff with any sort of release or request for permission to utilize your plaintiff's identity, or else his image, in any commercial activity, enterprise or production;

*(Colloquium)*

XXXV.

That, as adverted to above, your plaintiff was identified explicitly in the "Brüno" Movie as **"terrorist group leader al-aqsa martyrs brigade"**, under a bold display of his full name, *viz.*: **"Ayman Abu Aita"**;

XXXVI.

That, upon information and belief, the excerpt from the "Brüno" Movie in which your plaintiff was depicted, when viewed by the public on television sets and video monitors, through the WUSA outlet, *inter alia*, included the CBS trademarked "eye" logo, connoting the imprimatur of CBS News;

XXXVII.

That the depiction of your plaintiff in the "Brüno" Movie shows a full-facial view, such that there is no mistaking whom is being characterized as a "terrorist";

XXXVIII.

That, upon information and belief, your plaintiff's likeness has been misappropriated and used by COHEN, LETTERMAN, UNIVERSAL, CBS, WORLDWIDE, WUSA and CHARLES, *inter alios*, to promote and market the "Brüno" Movie and "The Late Show With David Letterman", as exemplified by, *inter alia*, an Internet viral marketing campaign, including the posting of several clips of the subject interview of your plaintiff by COHEN, excerpted from in the "Brüno" Movie, on the You Tube video

sharing website (*e.g.*: http://www.youtube.com/watch?v=ElTgT35fZWs ), which marketing method was pioneered by COHEN in his earlier "Borat" movie[3], and in the promotional language on the DVD jacket for the "Brüno" Movie, which references, *inter alia*, "terrorists"

*(Innuendo)*

XXXIX.

That, upon information and belief, the confluence of the foregoing enumerated circumstances, foreseeably and deliberately, were intended to and, in fact, did, brand falsely your plaintiff, a peace activist, family man and prominent businessman, as a "terrorist", and that, upon further information and belief, a substantial proportion of people in your plaintiff's hometown, as well as people throughout the world, including, *inter loci*, the District of Columbia, believe your plaintiff to be a terrorist and mass-murderer, based solely upon the malicious depiction of him as a "terrorist", both in the "Brüno" Movie , as well as on the David Letterman Show;

XL.

That the within-described accusations, insinuations and representations that your plaintiff is, or ever was, associated with the notorious Al-Aqsa Martyrs Brigade, or, for that matter, any other terrorist activity or cause, is utterly false and untrue, and your defendants, each of them, had every reason to believe or know that, yet slandered your plaintiff anywise;

*(Harm Sustained by Your Plaintiff)*

XLII.

That the calumnies described hereinbefore have caused your plaintiff to suffer extensive damage and loss, including, but not limited to, the following, viz.: death threats; shame; loss of reputation; loss of effectiveness as a community organizer and conciliator; depression and anxiety; loss of business to his family market; and fear for the well-being and safety of his wife, children, and his relatives, both on the West Bank and in the United States, and, indeed, throughout the world;

---

3   *See*: Stowe, Debbie & Paul Stump, "Who is Borat? The Unauthorized Biography of Sacha Baron Cohen", (Kandour Limited, Denmark (2007)), at p. 149.

XLIII.

That, in addition to the above-referenced range of harm to your plaintiff, the misappropriation of your plaintiff's likeness in the "Brüno" Movie, "The Late Show With David Letterman", and in promotional materials respecting such productions, has intruded upon your plaintiff's private life, and has falsely associated your plaintiff with a scurrilous and scandalous movie, causing him great emotional distress, depression and shame, to say nothing of loss of reputation and loss of business;

XLIV.

That, in addition, your plaintiff has incurred considerable attorneys' fees and travel expenses as he has been obliged to travel to the United States to vindicate his good name and, concomitantly, to salvage his reputation;

*(Wrongful Gain by Your Defendants)*

That, although it bears mention that, at this stage, pre-discovery, your plaintiff is not in a position to posit the ill-gotten gains realized by your corporate and individual defendants, upon information and belief, such gains were, indeed, substantial, and, as a benchmark in such regard, upon further information and belief, the current box office take from the "Brüno" Movie, exclusive of DVD sales, is approaching the sum of Two Hundred Million Dollars ($200,000,000);

*WRONGS OF THE DEFENDANTS*

*FIRST COUNT*
*(LIBEL AND SLANDER on 7 July 2009 Against All Defendants)*

XLV.

That your plaintiff hereby incorporates by reference herein, as if set out in full, each and every one of the foregoing averments contained in this First Amended Complaint;

XLVI.

That the depictions of your plaintiff in the "Brüno" Movie and on "The Late Show With David Letterman", as a "terrorist" were intended to, and in fact did, brand falsely your plaintiff as a terrorist and criminal, causing the harm complained of herein;

## SECOND COUNT
### (LIBEL AND SLANDER on 10 July 2009 Against COHEN, UNIVERSAL & CHARLES)

XLVII.

That your plaintiff hereby incorporates by reference herein, as if set out in full, each and every one of the foregoing averments contained in this First Amended Complaint;

XLVIII.

That the depictions of your plaintiff in the cinematic release of the "Brüno" Movie, as a "terrorist" were intended to, and in fact did, brand falsely your plaintiff as a terrorist and criminal, causing the harm complained of herein;

## THIRD COUNT
### (LIBEL AND SLANDER on 17 November 2009 Against COHEN, UNIVERSAL, CHARLES & BLOCKBUSTER)

XLIX.

That your plaintiff hereby incorporates by reference herein, as if set out in full, each and every one of the foregoing averments contained in this First Amended Complaint;

L.

That the depictions of your plaintiff in the DVD release of the "Brüno" Movie as a "terrorist" were intended to, and in fact did, brand falsely your plaintiff as a terrorist and criminal, causing the harm complained of herein;

## FOURTH COUNT
### (TORTOUS MISAPPROPRIATION OF NAME OR LIKENESS (Restatement of the Law, Second, Torts, § 652) Against All Defendants )

LI.

That your plaintiff hereby incorporates by reference herein, as if set out in full, each and every one of the foregoing averments contained in this First Amended Complaint;

LII.

That the misappropriation of your plaintiff's name and likeness in the "Brüno" Movie, "The Late Show With David Letterman", and in accompanying and ancillary promotional images, videos and materials, was without your plaintiff's consent or permission, and contrary to his intent, and led, *inter alia*, to your plaintiff's falsely being associated with the promotion and production of a scurrilous and scandalous movie, causing, actually, directly and proximately, your plaintiff to suffer the harm complained of herein, and resulting in unjust enrichment to your defendants;

### *PRAYER AND AD DAMNA*

WHEREFORE, and for the foregoing reasons, your plaintiff ever prays:

(i.) That, in consideration of a finding of liability in respect of his FIRST COUNT, he be awarded compensatory damages against all liable defendants, jointly and severally, in an amount to be determined by the trier of fact or else the sum of Ten Million Dollars ($10,000,000), and exemplary damages in the sum of One Hundred Million Dollars ($100,000,000) against each liable defendant;

(ii.) That, in consideration of a finding of liability in respect of his SECOND COUNT, he be awarded compensatory damages against all liable defendants, jointly and severally, in an amount to be determined by the trier of fact or else the sum of Ten Million Dollars ($10,000,000), and exemplary damages in the sum of One Hundred Million Dollars ($100,000,000) against each liable defendant;

(iii.) That, in consideration of a finding of liability in respect of his THIRD COUNT, he be awarded compensatory damages against all liable defendants, jointly and severally, in an amount to be determined by the trier of fact or else the sum of Ten Million Dollars ($10,000,000), and exemplary

damages in the sum of One Hundred Million Dollars ($100,000,000) against each liable defendant;

(iv.) That, in consideration of a finding of liability in respect of his FOURTH COUNT, he be awarded compensatory damages against all liable defendants, jointly and severally, in an amount to be determined by the trier of fact or else the sum of Ten Million Dollars ($10,000,000), and exemplary damages in the sum of One Hundred Million Dollars ($100,000,000) against each liable defendant;

(v.) That your defendants be enjoined, both *pendente lite* and permanently, to withdraw the "Brüno" Movie from commercial distribution by whatever means;

(vi.) That this Honorable Court impress a constructive trust on all revenues received or derived by your defendants as a result of the commercial distribution of the "Brüno" Movie and appurtenant usages of your plaintiff's name and likeness for commercial profit;

(vii.) That your plaintiff be awarded reasonable attorneys' fees with costs to follow; and

(viii.) That your plaintiff receive such other and further relief against your defendants as this Honorable Court may deem just and proper under the existent circumstances.

Dated: 5 February 2010, at Alexandria, Virginia.

                    Respectfully submitted,

                    /s/ Joseph Peter Drennan
                    **JOSEPH PETER DRENNAN**
                    District of Columbia Unified
                    Bar No. 358196
                    218 North Lee Street
                    Third Floor
                    Alexandria, Virginia 22314
                    Telephone: (703) 519-3773
                    Telecopier: (703) 548-4399
                    *E-Mail:* joseph@josephpeterdrennan.com

   /s/ Sam W. Burgan
**SAM W. BURGAN**
District of Columbia Unified
Bar No. 405478
5673 Columbia Pike, Suite 201
Falls Church, Virginia 22041
Telephone:(703) 575-8810
Telecopier: (703) 575-8054
*E-Mail:* BURGANLAW@aol.com


**HATEM ABO AHMAD**
Aaronsohn Sher Aboulafia, Amoday & Co., Law Offices
21 Herzog Street
Jerusalem, ISRAEL 92387
Telephone: (972-2) 5618677
Telecopier: (972-2) 5618678

Attorneys and Counsellors, *in Praesenti,* for Plaintiffs


### *DEMAND FOR TRIAL BY PETIT JURY*

Pursuant to Amendment VII of the Constitution of the United States of America, your plaintiff hereby and herewith demands a trial by a *petit* jury of all disputed factual issues as well as on issues related to monetary relief.


Respectfully submitted,

 /s/ Joseph Peter Drennan
**JOSEPH PETER DRENNAN**
District of Columbia Unified
Bar No. 358196
218 North Lee Street
Third Floor
Alexandria, Virginia 22314
Telephone: (703) 519-3773
Telecopier: (703) 548-4399
*E-Mail:* joseph@josephpeterdrennan.com